# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-IA-00319-SCT

*IN RE: HON. JAMES McCLURE, III, AND HON. GERALD W. CHATHAM, SR.*

| | |
|---|---|
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | PETITION FOR WRIT OF PROHIBITION DENIED - 10/06/2022 |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The current circuit court judges for the Seventeenth Circuit Court District of the State of Mississippi are Senior Judge James McClure, III, Judge Gerald W. Chatham, Sr., Judge Smith Murphey, and Judge Celeste Embrey Wilson.  Within the circuit court district are one court administrator and three deputy court administrators.  Judge Wilson's deputy court administrator resigned at the end of December 2021.  On March 21, 2022, Judge Wilson entered an Order Appointing and Setting Salary for Deputy Court Administrator.

¶2.     Judges McClure and Chatham filed a Petition for Writ of Prohibition with this Court challenging the legality of Judge Wilson's order.  They maintained that an order "employing any Court Administrator and setting the salary for said position" first required "approval of the majority of the [j]udges of the District."  Judge Wilson filed a response.  The Court finds that the petition does not warrant granting any relief and should be denied.

## LAW

¶3.     Because the circuit judges disagree on the proper interpretation of, and interplay between, Mississippi Code Sections 9-17-1 and 9-1-36, the Court begins by outlining the

relevant statutory language.

¶4.     Section 9-17-1 specifically addresses the office of court administrator, in pertinent part, as follows:

(1)     The judges and chancellors of judicial districts, including chancery, circuit and county courts, may, in their discretion, jointly or independently, establish the office of court administrator in any county by an order entered on the minutes of each participating court in the county.

The establishment of the office of court administrator shall be accomplished by vote of a majority of the participating judges and chancellors in the county, and such court administrator shall be appointed by vote of a majority of the judges or chancellors and may be removed by a majority vote of the judges or chancellors. In case of a tie vote, the senior judge or senior chancellor shall cast two (2) votes.

. . . .

(3)     The annual salary of each court administrator appointed pursuant to this section shall be set by vote of the judges and chancellors of each participating county and shall be submitted to the Administrative Office of Courts [(AOC)] for approval pursuant to Section 9-1-36. The salary shall be paid in twelve (12) installments on the last working day of the month by the [AOC] after it has been authorized by the participating judges and chancellors and an order has been duly placed on the minutes of each participating court.

Miss. Code Ann. § 9-17-1 (Rev. 2019).

¶5.     More generally, Section 9-1-36 addresses certain funds provided to individual judges for office-related expenses and "support staff."[1]  Miss. Code Ann. § 9-1-36(1), (2) (Rev.

---

[1]"Support staff" is defined as "court administrators, law clerks, legal research assistants or secretaries, or any combination thereof . . . ." Miss. Code Ann. § 9-1-36(6)(b) (Rev. 2019) (internal quotation marks omitted).

2

2019).  The "separate office allowance fund for the purpose of providing support staff to judges[]" is "managed by" the AOC.  Miss. Code Ann. § 9-1-36(2) (Rev. 2019).  "[F]or the funding of support staff assigned to a judge or judges[,]" each circuit judge receives $80,000 annually.[2]  Miss. Code Ann. § 9-1-36(5) (Rev. 2019).  Section 9-1-36(3) adds that

> [e]ach judge who desires to employ support staff after July 1, 1994, shall make application to the [AOC] by submitting to the [AOC] a proposed personnel plan setting forth what support staff is deemed necessary.  The plan may be submitted by a single judge or by any combination of judges desiring to share support staff.  In the process of the preparation of the plan, the judges, at their request, may receive advice, suggestions, recommendations and other assistance from the [AOC].  The [AOC] must approve the positions, job descriptions and salaries before the positions may be filled.[3]  The [AOC] shall not approve any plan which does not first require the expenditure of the funds in the support staff fund for compensation of any of the support staff before expenditure is authorized of county funds for that purpose.  Upon approval by the [AOC], the judge or judges may appoint the employees to the position or positions, and each employee so appointed will work at the will and pleasure of the judge or judges who appointed him but will be employees of the [AOC]. Upon approval by the [AOC], the appointment of any support staff shall be evidenced by the entry of an order on the minutes of the court.

Miss. Code Ann. § 9-1-36(3) (Rev. 2019).  Finally, "[t]he Supreme Court, through the [AOC], shall have the power to adopt rules and regulations regarding the administration of the office operating allowance authorized pursuant to this section."  Miss. Code Ann. § 9-1-

---

[2]In email correspondence with Judge Wilson, AOC Deputy Director Lisa Counts explained that "Section 9-1-36(5)(a) states that each judge shall receive $40,000 to hire his or her staff pursuant to AOC approval. . . .  Should a law clerk be needed, the AOC will provide an extra $40,000 for the employment of a law clerk."

[3]For instance, with respect to court administrators, the AOC "shall develop and promulgate minimum qualifications for" their certification and any individual "appointed" to the position "shall be required to be certified by the" AOC.  Miss. Code Ann. § 9-1-36(4) (Rev. 2019).

3

36(10) (Rev. 2019).

## FACTS AND PROCEDURAL HISTORY[4]

¶6.     On November 29, 2021, Judge Wilson emailed Judges McClure, Chatham, and

Murphey that her deputy court administrator had notified her "that she plans to leave her

current position" by the end of the year.  In an effort to "speed up the process" of finding a

replacement, Judge Wilson requested that the other judges review the job description that she

intended to have posted and inform her whether they found it "satisfactory."  The record

before us reveals no response.

¶7.     On December 20, 2021, Judge Wilson emailed the other judges that the deputy court

administrator position had been advertised for approximately two weeks; but, given the

approaching holidays, "there is not enough time to go through the process with you and give

someone time to notify their employer with the standard two (2) weeks' notice."  As the

position would be vacant at the end of 2021, Judge Wilson requested that the "court

---

[4]Preliminarily, the Court acknowledges the unusual nature of this case, involving a
dispute between trial court judges in their official capacities.  Such a dispute constitutes the
sort of exceptional matter over which the Court may exercise original jurisdiction even in the
absence of a record of trial court proceedings.  *E.g.*, ***State v. Maples***, 402 So. 2d 350, 353
(Miss. 1981) (the Court has "original jurisdiction to entertain a petition for writ of
prohibition"); M.R.A.P. 21(e) (recognizing that there are "extraordinary writs other than
those provided for in subdivisions (c) and (d)" and that such proceedings "shall conform, so
far as is practicable, to the procedure prescribed in subdivisions (c) and (d)").  In these
unique circumstances, however, there is no formal record for the Court to review.  The
parties have provided the Court nothing other than pleadings and attached exhibits.
Therefore, the "Facts and Procedural History" recounted here is based upon those materials,
as well as correspondence between these judges and the AOC (of which the Court takes
judicial notice, as that correspondence is part of the official records of the AOC).

4

administrators" for the other circuit court judges "assist" her beginning in January 2022, "so that the court system can run smoothly until the right person is located and we agree on the hire/rate of pay, etc." Given the time-sensitive nature of her request, Judge Wilson sought a response(s) by 5:00 p.m. on December 22, 2021.

¶8. On December 22, 2021, Judge Chatham responded (within what he described as Judge Wilson's "arbitrarily imposed deadline") that his deputy court administrator would be unable to assist her because "our schedules are very busy and hectic after the Christmas holidays." On December 24, 2021, Judge McClure responded similarly that his court administrator "is unavailable to assist you until you find a replacement court administrator."

¶9. On December 27, 2021, Judge Wilson emailed Judges McClure and Chatham that, pursuant to Mississippi Code Section 9-17-3 (duties of court administrator), court administrators are to "[p]rovide general administrative support for all judges and chancellors of the district . . . ." Miss. Code Ann. § 9-17-3(e) (Rev. 2019). She sought their "interpretation" of that statute, asking "how [they] would like the district to function until another court administrator is hired/appointed."

¶10. On December 29, 2021, Judge Chatham responded, opining that Section 9-17-3 was inapplicable to him because that provision "applies to the Court Administrator only, not the Deputy Court Administrator." He added that his deputy court administrator "will provide to you and all other Circuit Judges general and administrative support as provided in the AOC guidelines" (albeit only "if and when she's available[,]" and "[a]ll requests for her assistance

should be made to me and not her"). On January 21, 2022, however, Judge Chatham followed up with Judge Wilson that his deputy court administrator would no longer "be available to assist you . . . after January 28, 2022." Furthermore, according to Judge Wilson, the court administrator for the district, who was assigned to Judge McClure, never provided her any "clerical assistance . . . ."[5]

¶11.   On January 25, 2022, Judge Wilson began email correspondence on the matter with AOC Deputy Director Lisa Counts. Initially, they discussed whether particular applicants met "minimum qualifications" for the AOC's approval and, if so, the potential "salary range" for the position. In one such email exchange, Counts noted that

> [a]ny portion of salary that is not covered by your salary funds provided by the AOC must be covered by the counties in your district. The AOC will need either letters from each county that they agree to cover the excess cost or certified board minutes showing the boards of supervisors agree to cover the excess cost.[6]

¶12.   On February 4, 2022, Judge Wilson emailed the other circuit judges "to recommend" an applicant "to fill the vacancy of Deputy Court Administrator." She noted that Counts had "approve[d] [the applicant] for the position and for a salary of up to $58,300." At Judge Chatham's request, Judge Wilson also attached a copy of the applicant's resumé. Judge Wilson added that "I am happy to meet with you to discuss this hire and salary if desired or

---

[5]Email correspondence from Judge Murphey to AOC Deputy Director Counts reported that his deputy court administrator was "helping Judge Wilson alone now . . . ."

[6]Judge Wilson subsequently provided to the AOC the required documentation of consent by the affected counties.

I am happy to circulate an order." Yet Judge Wilson avers that she was "unable to receive cooperation from" Judges McClure and Chatham.

¶13. On February 10, 2022, Judge Wilson included Counts on an email in which she expressed her "understanding that it is acceptable" to apply her "statutory allowance" of $40,000 toward filling the deputy-court-administrator vacancy and "appoint" an individual to that position. Judge Wilson added:

> [p]lease let me know if this is lawful and what I would need to do for this to occur should the cooperation of the other judges be lacking. [Counts] indicated that I would need to let the other judges know in writing that I am pulling my funding from their court administrator positions and gain approval for funding from the board of supervisors.

On February 16, 2022, Counts responded:

> [i]t is my understanding that you may use your funds in any way you would like as long as the staff are being paid within the appropriate salary range. In addition, if you are expending funds above what the AOC allocates to you, you must provide confirmation from your counties that they are willing to cover the difference.

¶14. On February 17, 2022, Judge Wilson sought additional advice. She referenced Section 9-17-1, emphasized her "intent . . . to use 100% of [the] $40,000 [provided] in 9-1-36(5)(a)," and asked, "[i]s a vote needed to appoint and set compensation for a deputy court administrator if no other judge's funds are being used? Can I establish the office of court administrator within my order appointing and setting forth funding or is a vote needed?" Judge Wilson also wrote, "I just want to do the right thing and in the process fill this

vacancy."[7]  That same day, Counts responded that "[m]y understanding is that a deputy court administrator that works for one judge [and] is being paid by one judge does *not* have to be agreed upon by all judges."  (Emphasis added.)  In a later email to Judge Wilson, Counts stated that "[t]his is the first time I have ever had an issue with this.  The usual process is that a judge . . . is allowed to choose their own staff with approval by the AOC."[8]

¶15.  On February 18, 2022, Judge Chatham emailed Counts (and copied Judge McClure) to express his dismay at the AOC's preapproval of an applicant because, *inter alia*, Judge Wilson failed first to "ge[t] her fellow Circuit Judge's approval, contrary to AOC guidelines."

¶16.  In a February 25, 2022, email to Counts, Judge Wilson stated that "I think I have reached an impasse unless you or the appropriate person can say that the AOC job description is silent on the process for appointing a court administrator independently and allocating only the $40,000 statutory allowance plus approved board of supervisor funds thereby not requiring any vote . . . ."  On February 28, 2022, Counts responded:

> Section 9-1-36(5)(a) states that each judge receives $40,000 to hire his or her staff pursuant to AOC approval.  Approval of other judges in the district is *not* required.  Should a law clerk be needed, the AOC will provide an extra $40,000 for the employment of a law clerk.  Again, approval of other judges in the district is not required.

---

[7]This was a recurring sentiment in Judge Wilson's correspondence with the AOC (*e.g.*, "I want to make sure I am correct with how I proceed.  Can you confirm that there is no AOC policy prohibiting such allocation and hiring?").

[8]Counts's statement on the "usual process" is correct.  *See* Miss. Code Ann. § 9-1-36(3).

8

Regarding job descriptions, the language addressing a personnel plan [in Section 9-1-36(3)] was put into place to address the original hiring when the district/AOC were created. Once the personnel plan was approved by the AOC, the AOC simply confirms that the person you wish to hire meets the qualifications set forth by the AOC if the potential employee is replacing someone already in your employment.

(Emphasis added.)

¶17.   On March 3, 2022, Judge Wilson notified the other judges that the applicant under consideration at that time had "declined the position."

¶18.   On March 9, 2022, Judge Wilson emailed Counts and requested that she review the resumé of applicant Amy Young to determine whether she "meets the minimum qualifications for the position of Deputy Court Administrator." That same day, Counts responded that Young "absolutely meets" those requirements.

¶19.   On March 17, 2022, Judge Wilson sent a letter to each of the other circuit judges which expressed that "[i]t seems we have reached an impasse on filling the Deputy Court Administrator vacancy." She stated that "[t]his letter is to serve as notice that I will be utilizing 100% of the remaining sum of the $40,000 allocated to my position pursuant to [Section] 9-1-36(5)(a) . . . to fill the vacancy . . . ." According to Judge Wilson, she "received no response from" Judges McClure or Chatham.

¶20.   On March 21, 2022, Judge Wilson entered an Order Appointing and Setting Salary for Deputy Court Administrator. The order provided that Amy Young was appointed as "Deputy Court Administrator" at an annual salary of $58,299.99, effective April 1, 2022, and it added specific details on the funding for Young's salary, *i.e.*, her salary would include

9

"100%" of Judge Wilson's "support staff funds" ($40,000), with the remaining amount coming from "counties of the District" at enumerated percentages.

¶21.  On March 28, 2022 (8:17 a.m.), Judge McClure sent an email to Judge Wilson, copying Judges Chatham and Murphey, as well as AOC Director E. Gregory Snowden and Deputy Director Counts, that challenged the legality of Judge Wilson's order of March 21, 2022.  In his estimation, Judge Wilson's action contravened Section 9-17-1 insofar as the appointment of Young and the setting of her salary were done without the other circuit judges' having been given the opportunity to vote thereon.  Judge McClure requested that Judge Wilson "rescind or withdraw" the order by March 30, 2022.  Absent such action, he warned that it "will be appealed to the Supreme Court and a complaint will be filed against you with the Judicial Performance Commission or other actions."

¶22.  That same day, AOC Director Snowden issued a letter to Judge Wilson which informed her that her order, "under authority of [Sections] 9-17-1 et seq., whereby the setting of such salary in the above amount and the method by which said salary is to be paid, is hereby approved by the [AOC] in compliance with [Section] 9-1-36."

¶23.  On March 30, 2022, Judge Wilson sent an email to Judge McClure, copying Judges Chatham and Murphey, AOC Director Snowden and Deputy Director Counts.  She wrote that

> I have been without a court administrator since approximately the first of this year.  I have sent multiple emails to you and my fellow judges on the need for a court administrator and filling the vacancy.  I did not receive a single email, text or phone call from you on the topic from December 24, 2021 until March 28, 2022. . . .  While I certainly appreciate your interpretation of the law, it would have been nice to have had communication from you prior to the entry

10

of the [O]rder . . . which is the subject of your email . . . .

Judge Wilson also noted in her email that Section 9-17-1 "is silent as to the position of Deputy Court Administrator."

¶24. On April 1, 2022, Amy Young began her employment in Judge Wilson's chambers as deputy court administrator.

¶25. On April 4, 2022, Judges McClure and Chatham (collectively, "petitioning judges") filed the present Petition for Writ of Prohibition. At this Court's direction, the Clerk of the Supreme Court sent a notice to Judge Wilson, pursuant to Mississippi Rule of Appellate Procedure 21(d), calling for an answer to the petition. On April 26, 2022, Judge Wilson filed her response.

¶26. On May 18, 2022, the Court entered an *en banc* order[9] which provided, in pertinent part:

> [T]his petition shall be treated as a petition for interlocutory appeal pursuant to M.R.A.P. 5, permission to appeal shall be granted, and all judges of the [district] are directed to appear before Mississippi Judicial College Director Randy G. Pierce for a conference to consider the simplification of the issues and such other matters as may aid in the disposition of the proceeding by the Court, including settlement.[[10]]

¶27. On September 12, 2022, Pierce filed a letter with the Court reporting that he met with the Judges on June 28, 2022, and again on August 29, 2022. Judge

___

[9]Justices Coleman, Maxwell and Chamberlin have recused from this case.

[10]*See* M.R.A.P. 21(d) (The Court "may, in its discretion, treat the petition as a petition for permission to appeal under Rule 5 and order such further proceedings as the Court deems appropriate.").

11

[McClure] and Judge [Chatham] were present and represented by attorney Alan D. "Devo" Lancaster. Judge [Wilson] and Judge [Murphey] were present and were not represented by counsel.

Unfortunately, after several hours of discussions with the above individuals, a successful resolution of the disputed issues was not attained. There is disagreement, *inter alia*, as to the proper interplay between MCA 9-17-1 and MCA 9-1-36.

## ARGUMENTS OF THE PARTIES

¶28. The petitioning judges seek issuance of a writ of prohibition:

vacating [the] [O]rder of March 21, 2022 appointing [Young] as Deputy Court Administrator with an annual salary of $58,299.99, as [Judge Wilson] was without authority as she violated the statutes, orders and applicable rules[11] . . . . Further, that Judge Wilson be prohibited from employing any Court Administrator and setting the salary for said position without approval of the majority of the Judges of the District. Further, that Judge Wilson be ordered to rescind the Order hiring [Young] as Deputy Court Administrator.

¶29. Judge Wilson responds that her order, created in an "attemp[t] to resolve the vacancy after approximately four (4) months of attempts at communication and resolution with the" petitioning judges, was entered "in good faith and with an honest belief that her actions followed and were authorized by Mississippi law and" the AOC. According to Judge Wilson, as the position at issue was *deputy* court administrator, then Section 9-17-1 "does *not* apply . . . and no vote was necessary . . . ." (Emphasis added.) Alternatively, she

---

[11]As to such authorities, the petitioning judges reference: (1) Section 9-17-1; (2) Administrative Order No. 2000-AD-00158, *In re: Job Descriptions and Salary Ranges for AOC Support Staff in Chancery and Circuit Courts* (Miss. Dec. 27, 2000); and (3) "AOC Trial Court Support Staff Job Descriptions and Salary Ranges – Chancery & Circuit Court – Effective October 5, 2021."

contends that there is "authority vested in [Section] 9-17-1 [and] [Section] 9-1-36(3) for judges to act 'independently[;]'" that she had done so in appointing Young as deputy court administrator; and that as "an individually participating judge . . . no vote was necessary." Judge Wilson adds that Section 9-1-36(10) "gives power to the AOC to adopt rules and regulations regarding the administration of the office operating allowance" and that she sought (and followed) the AOC's instructions "as to their procedure for filling the vacancy for support staff with the sole use of the operating allowance designated for her judicial post." In sum, Judge Wilson contends that she "chose to act as an individual judge, independent from the other judges in the district[;]" that she "only used the monies allocated to her position through [Section] 9-1-36[;]" and that her actions were "in accordance with the aforementioned statutes and approved by the AOC thereby making the Order lawful."

## ANALYSIS

### *Whether Judge Wilson's Order Appointing and Setting Salary for Deputy Court Administrator was lawful.*

¶30. The Court is persuaded that Judge Wilson's averment that she acted "in good faith and with an honest belief that her actions followed and were authorized by Mississippi law and" the AOC is corroborated by the record before us.

¶31. Over the course of several months, Judge Wilson made persistent and reasonable efforts to fill the vacant deputy-court-administrator position, and she attempted to find alternatives until the vacancy could be filled (*e.g.*, asking her fellow circuit judges to share staff with her). She sought input from those judges on whether the proposed job description

13

was "satisfactory" and their agreement "on the hire/rate of pay, etc." With regard to one applicant, Judge Wilson expressed her availability to meet with the other judges to discuss the hire and salary. Yet those efforts were consistently disregarded or stymied by Judges McClure and Chatham. Confronted by their generally adversarial responses, their continued unresponsiveness, their collective refusal to make their own administrators available to assist Judge Wilson, and the protracted and unexplained delay in filling the position, Judge Wilson sought direction from the AOC.

¶32. The AOC was, indeed, the correct entity from which Judge Wilson should have sought direction. The AOC director is statutorily responsible for "coordinat[ing] the functions and duties of administrative personnel, including court administrators and court administrative aides to judges, to facilitate cooperation and so that the overall administration of justice may be accomplished with efficiency in all courts of the state." Miss. Code Ann. § 9-21-13(1) (Rev. 2019). Moreover, this Court, "through the [AOC], shall have the power to adopt rules and regulations regarding the administration of the office operating allowance[;]" and Judge Wilson needed the AOC's approval of the qualifications of, and salary for, any applicant as a prerequisite to appointment. Miss. Code Ann. § 9-1-36(3), (10) (Rev. 2019). *See generally* Miss. Code Ann. §§ 9-21-9(g), -13(2) (Rev. 2019).

¶33. Judge Wilson's correspondence with the AOC is replete with her fervent attempts to fill an essential position on her limited staff in a lawful manner. AOC Deputy Director Lisa Counts correctly advised Judge Wilson that a deputy court administrator was the type of

14

"support staff" for whom Section 9-1-36(5)(a) provides each judge $40,000 "to hire . . . pursuant to AOC approval" and that she could unilaterally appoint an otherwise-qualified applicant without a vote of "[a]pproval of other judges in the District" as long as the individual worked for her, was paid by her, and that she could document that each county of the District "agree[d] to cover the excess cost" over and above Judge Wilson's allotted $40,000.

¶34.    Judge Wilson provided clear and ample documentation of consent by the affected counties and determined that "[t]he monies allocated in the 2021/2022 budgets by each participating county were sufficient to cover the" remainder of the salary for the position. After receiving Counts's assurance that applicant Amy Young met "the minimum qualifications for the position[,]" Judge Wilson informed her fellow judges that, due to the "impasse[,]" she would "utiliz[e]" the entire $40,000 amount allocated to her under Section 9-1-36(5)(a) "to fill the vacancy . . . ." Neither Judge McClure nor Judge Chatham expressed any reason why Amy Young was not an acceptable candidate or why they would not have approved Judge Wilson's decision to hire her. Upon receiving no response from her colleagues, she entered the Order Appointing and Setting Salary for Deputy Court Administrator four days later. AOC Director Snowden's March 28, 2022, letter to Judge Wilson provided official confirmation that her order was "approved by the [AOC] in compliance with [Section] 9-1-36."

¶35.    Additionally, the Court finds that court administrator and deputy court administrator

15

clearly are different positions.[12] The Court agrees with Judge Wilson that Section 9-17-1 "is silent as to the position of Deputy Court Administrator." Rather, Section 9-17-1 addresses the voting procedures for "establishment of the office of *court administrator*[,]" the "appointment" (or "removal") of "such *court administrator*[,]" and in setting "[t]he annual salary of each *court administrator* appointed[;]" but makes no mention of deputy court administrators.[13] Miss. Code Ann. § 9-17-1(1), (3) (Rev. 2019) (emphasis added). The petitioning judges' reliance on Section 9-17-1 alone did not lead them to a correct understanding of the applicable law.

¶36. Under the circumstances presented, the Court agrees with Judge Wilson that "no vote was necessary" and that her Order Appointing and Setting Salary for Deputy Court Administrator was appropriate and altogether lawful. Authorization from the other circuit judges in the district was not a prerequisite for Judge Wilson's entry of that order. Accordingly, the Court finds that the Petition for Writ of Prohibition is without merit; it is denied. The Court finds also that a motion for rehearing in this matter is not authorized. This

---

[12]Administrative Order No. 2000-AD-00158, *In re: Job Descriptions and Salary Ranges for AOC Support Staff in Chancery and Circuit Courts* (Miss. Dec. 27, 2000), included an attachment that addressed "adjustments in salary ranges and job descriptions" for the AOC as to various "trial court support staff employees" and which differentiated the positions of court administrator and deputy court administrator in terms of salary and roles/responsibilities. The "AOC Trial Court Support Staff Job Descriptions and Salary Ranges – Chancery & Circuit Court – Effective October 5, 2021" differentiated the positions in those same terms.

[13]Relatedly, the Court finds it noteworthy that, in a December 29, 2021 email, Judge Chatham maintained correctly that Section 9-17-3 (duties of court administrator) "applies to the *Court Administrator only* . . . ." (Emphasis added.)

16

decision is final. *See* M.R.A.P. 2(c) (suspension of rules). The Clerk of this Court shall issue the mandate in this case immediately.

¶37. **PETITION FOR WRIT OF PROHIBITION DENIED.**

      **RANDOLPH, C.J., KING, P.J., BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, MAXWELL AND CHAMBERLIN, JJ., NOT PARTICIPATING.**